UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| TRENT HAVERKAMP, and ) | |
| TRAVIS BLAIR, individually and on ) | |
| behalf of those similarly situated, ) | |
| ) | |
| Plaintiffs, ) | 4:16-cv-00004-RLY-TAB |
| ) | |
| vs. ) | |
| ) | |
| STAR OF AMERICA, LLC, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Trent Haverkamp and Travis Blair, two drivers employed by Defendant, Star of America, LLC, bring this putative collective action, claiming they were deprived of overtime pay owed under the Fair Labor Standards Act ("FLSA"). Star maintains it has no obligation to provide Plaintiffs with overtime pay because they are exempt from that requirement under the Motor Carrier Act exemption to the FLSA, 29 U.S.C. § 213(b)(1). Star now moves for summary judgment. For the reasons herein set forth, the court **DENIES** Star's motion.

**I.     Background**

Star is a federally authorized for-hire provider of passenger transportation. (Filing No. 40-1, Declaration of Larry D. Shickles ("Shickles Decl.") ¶ 2). At all times relevant to this lawsuit, it has maintained its assigned DOT number and observed the DOT's Federal Motor Carrier Safety Regulations ("FMCSRs") with respect to all drivers and

1

other applicable employees. (*Id*. ¶ 3). Furthermore, the DOT has conducted regular compliance audits of driver files kept by Star. (*Id.* ¶ 4). Star provides two types of services: (1) charter services, which cross state lines, from which it derives the majority of its revenue; and (2) shuttle services, which do not cross Indiana's borders. (*Id.* ¶ 5). This case concerns Star's shuttle services.

Pursuant to the parties "Scheduled Route Agreement," Star has a nonexclusive right to provide transportation services to its passengers to and from the Airport. (*Id.* ¶ 19, Ex. D). Its routes, which are traveled seven days a week on a set schedule, are between West Lafayette, Indiana and the Indianapolis International Airport ("Airport"), and Bloomington, Indiana and the Airport. (*Id.* ¶ 6). For example, on its early morning "Depart Lafayette/Purdue to Indianapolis Airport" schedule, Star's shuttle leaves Folletts Purdue West, Tarkington Hall, Memorial Union, and the Courtyard by Marriott at 4:20, 4:25, and 4:55 a.m., respectively, and arrives at the airport at 6:10 a.m. (*Id.* ¶ 7, Ex. A). At the airport, the shuttle drops passengers at the Airport's Ground Transportation Center. (*Id.* ¶ 9). The drivers also pick up passengers from the Airport's Ground Transportation Center and depart to either Bloomington or Lafayette. (*Id.*). On the shuttle's early morning run from the Airport back to Lafayette/Purdue, it departs the Airport at 6:20 a.m. and drops passengers at the Courtyard by Marriott, Memorial Union, Tarkington Hall, and Folletts Purdue West at 7:35, 8:00, 8:05, and 8:10 a.m., respectively. (*Id.* ¶ 7, Ex. A). Throughout the day, the shuttle runs between these 4 Lafayette/Purdue locations and the Airport continuously until its last Lafayette/Purdue drop-off at 12:10 a.m. It makes no other stops. (*Id.*). Both Havercamp and Blair drove

2

the shuttle from points in Lafayette to the Airport.  (Filing No. 45-1, Declaration of Trent Havercamp ("Havercamp Decl") ¶ 1; Filing No. 45-2, Declaration of Travis Blair ("Blair Decl.") ¶ 1).

The shuttle has similar routes in Bloomington.  (Shickles Decl. ¶ 8, Ex. B).  Both the Lafayette/Purdue routes and the Bloomington/Indiana University routes run from approximately 4:00 a.m. to 12 a.m.  (*Id.* ¶¶ 7-8, Exs. A, B).  Both Purdue University and Indiana University advertise the Shuttle Services as an option for transport to and from the Airport.  (*Id.* ¶ 11).

Between 2013 and 2016, a total of 6,373 people who purchased the Shuttle Services had billing addresses from countries other than the United States.  (*Id.* ¶ 13). The majority of passengers purchase their tickets online through Star's website in advance of their travel.  (*Id.* ¶ 14).  They may also purchase tickets from the shuttle driver.  (*Id.* ¶ 16).

All commercial flights to or from the Airport during the claim period beginning January 6, 2013, crossed state lines.  (Filing No. 40-2, Declaration of E. Ashley Paynter ¶¶ 2-6).

Any additional facts necessary for the disposition of this motion will be addressed in the Discussion Section.

## II.   Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court's function is not to weigh the evidence and

determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. In deciding whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

### III. Discussion

The FLSA requires an employer to compensate its employees at a rate of not less than one and one-half times their regular rate of pay for those hours worked in excess of forty hours. 29 U.S.C. § 207(a)(1). The FLSA exempts from the overtime pay requirement "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." 29 U.S.C. § 213(b)(1). This is known as the Motor Carrier Act ("MCA") exemption. Whether the MCA exemption applies "'is dependent on whether the Secretary has the power to regulate, not on whether the Secretary has actually exercised such power.'" *Abel v. Southern Shuttle Servs., Inc.*, 631 F.3d 1210, 1213 (11th Cir. 2011) (quoting *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181 n. 2 (11th Cir. 1991)). In other words, "'for the MCA exemption to apply, the Secretary of Transportation's power to regulate under the act merely needs to cover a particular group of employees.'" *Id.* (quoting *Walters v. Am. Coach Lines of Miami, Inc.*,

4

575 F.3d 1221, 1226 (11th Cir. 2009)).  The court "construe[s] FLSA exemptions narrowly against the employer," and the employer bears the burden of proving the applicability of the provision.  *Id.* at 1212.

The Department of Labor has codified a two-part test to determine if an employee is subject to the MCA exemption, based on its interpretation of the relevant statutes and case law.  An employee is exempt if: (1) he is employed by a motor carrier whose transportation of passengers by motor vehicle is subject to the Secretary of Transportation's jurisdiction under 49 U.S.C. § 31502; and (2) he is engaged in activities affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce.  29 C.F.R. § 782.2(a).

Plaintiffs' concede that Star satisfies element (1); thus, the only issue in dispute is element (2)—specifically, whether Plaintiffs are engaged in interstate travel.  "Purely intrastate travel," as is present here, "can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.'"  *Walters*, 575 F.3d at 1229 (quoting *Chao v. First Class Coach Co., Inc.*, 214 F. Supp. 2d 1263, 1272 (M.D. Fla. 2001)).  "For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow."  *Id.* (citing *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943)).  Whether set-route, contractually exclusive airport services are the type of work covered by the Motor Carrier Exemption is an issue of first impression in the Seventh Circuit.  Therefore, the court looks to the decisions from other circuits to guide its analysis.

In *United States v. Capital Transit Co.*, the Interstate Commerce Commission sought to regulate certain bus and street car rates for travel exclusively within the boundaries of the District of Columbia. 338 U.S. 286, 288 (1949). The travel at issue consisted of "thousands of Government employees living in the District [who] boarded [Defendants'] streetcars near their residences, rode to the District's business area, and there transferred to one of the Virginia buses for carriage to the nearby Virginia establishments." *Id.* The Supreme Court rejected Capital Transit's argument that its bus and streetcar transportation was entirely intrastate and, therefore, was not subject to the jurisdiction of the Commission. *Id.* at 290. "Transit's intra-District streetcar and bus transportation of passengers going to and from the Virginia establishments is an integral part of an interstate movement." *Id.*

In *Walters*, *supra*, American Coach Lines of Miami ("ACLM") had a contract with Royal Caribbean Cruise Lines to transport passengers to and from the ship ports and the Miami and Fort Lauderdale airports. 575 F.3d at 1224. The bus trip was included as part of the passengers' vacation packages booked through Royal Caribbean or travel agents. *Id.* The passengers used vouchers to board the shuttle, and the shuttle invoiced Royal Caribbean for the trips. *Id.* ACLM also had informal agreements with other cruise lines to provide similar services. *Id.* In finding the airport-to-seaport routes constitute interstate commerce and thus come under the Secretary of Transportation's jurisdiction, the court noted that ACLM had a "common arrangement" with the cruise lines, and that from "the perspective of the cruise passengers, ACLM's trips were an essential and intrinsic component of the overall stream of interstate travel transporting passengers from

6

their points of departure to the cruise ships (and exotic foreign and out-of-state ports of call) and back home again." *Id.* at 1234. The court further found ACLM met the second prong of the MCS exemption test, as the plaintiff bus drivers conceded that they reasonably could be expected to drive such routes. *Id.* at 1235.

In *Abel*, *supra.*, Southern Shuttle operated a service that transported passengers to and from three Southern Florida airports. 631 F.3d at 1211. A large portion of its reservations were made through internet package deals wherein the traveler bought a package deal from a third party company (Expedia.com, Orbitz, Travelocity, and the like) that included airfare, hotel accommodations, and transportation to and from the airport. *Id.* at 1212. The travelers used vouchers to board the shuttle to and from the airport, and Southern Shuttle would then prepare an invoice to the third party company for payment. *Id.* In finding Southern Shuttle was subject to the Secretary's jurisdiction, the Eleventh Circuit concluded that "[its] arrangement with internet travel companies to provide airport shuttle services for their package-deal customers meets the 'common arrangement' requirement discussed in *Walters*." *Id.* at 1217. And because the plaintiff performed Southern Shuttle's core airport shuttle transport activity, the MCA exemption applied. *Id.*

In the present case, Star maintains its shuttle service, which operated purely intrastate, is subject to the motor carrier exemption because it is "part of a continuous stream of interstate transportation" and is "an integral part of an interstate movement." (Filing No. 56, Defendant's Reply at 12, citing *Capital Transit*, 338 U.S. at 290). A

reasonable juror could conclude, however, that the continuous stream of interstate transportation is not present in this case.

As the court understands the evidence, Star had an agreement with the Airport which allowed it to transport passengers to and from the Airport on a set schedule. Unlike *Walters* and *Abel*, shuttle passengers did not purchase their tickets as part of a package deal with, for example, an airline at the Airport. Instead, they purchased a shuttle pass separately that dropped them off at the Airport. Star argues this fact is not significant because its passengers then boarded an airplane for an out-of-state destination. Star's evidence in support of this proposition is based upon the fact that most of the passengers had out-of-state billing addresses, and the fact that Star's shuttle service dropped passengers off at the airport. Star has no evidence, however, that any one passenger purchased a Star shuttle pass for purposes of out-of-state travel by airplane. The out-of-state billing address is the address of the individual who paid for the ticket, but not necessarily the address of the passenger. It is not beyond the realm of possibility that the billing address represents the address of the passengers' parents', as Star maintains the bulk of its business is transporting college students. To this end, Plaintiffs testified that not all passengers boarded airplanes[1]; some took an Uber, for example, to go to downtown Indianapolis. (Haverkamp Decl. ¶ 5; Blair Decl. ¶ 5). The court therefore

---

[1] Star argues this testimony constitutes inadmissible hearsay and should be disregarded. The court does not agree. Both declarations explicitly state that the Plaintiffs' testimony is based on personal knowledge. (*See* Haverkamp and Blair Decl., opening paragraph). Thus, their testimony is based upon what they observed.

8

finds a material issue of fact remains on whether Plaintiffs' job duties occurred in interstate commerce. Star's motion for summary judgment is therefore **DENIED**.

## IV. Conclusion

For the reasons herein set forth, the court **DENIES** Defendant's Motion for Summary Judgment (Filing No. 38).

**SO ORDERED** this 16th day of June 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.